Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Daphne Ramírez, Olga R. Ramírez y Carlos Andino       Recurridos<br><br>v.<br><br> Junta de Planificación de  Puerto  Rico       Recurrida<br>_____<br><br> Municipio de San Juan       Recurrida<br><br>v.<br><br>Junta de Planificación de Puerto Rico       Agencia-Recurrida<br><br>Reynaldo Domínguez Fragoso        Peticionario | Certiorari<br><br>2012 TSPR 96<br><br>185 DPR ____ |

Número del Caso: CC-2011-772


Fecha: 1ro de junio de 2012


Tribunal de Apelaciones:

        Región Judicial de San Juan

Abogadas de la Parte Peticionaria:

        Lcda. Leonor Porrata Doria
        Lcda. Linnette Vázquez Rivera

    ´    Lcda. Sylvia Roger Stefani
        Procuradora General Auxiliar



Abogadas de la Parte Recurrida:

        Lcda. Lizzie Tomasini
        Lcdo. Carlos D. Rodríguez Boneta


Materia: Derecho Administrativo – Deber de notificar a las partes con interés en decisión administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Daphne Ramírez, Olga R. Ramírez y Carlos Andino<br><br>   Recurridos<br><br>       v.<br><br>Junta de Planificación de Puerto Rico<br><br>   Recurrida<br><br>―――――――――――<br><br>Municipio de San Juan<br><br>   Recurrida<br><br>       v.<br><br>Junta de Planificación de Puerto Rico<br><br>   Agencia-Recurrida<br><br>Reynaldo Domínguez Fragoso<br><br>   Peticionario | CC-2011-772 | Certiorari |

Opinión del Tribunal por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 1 de junio de 2012.

En esta ocasión nos corresponde determinar si un ciudadano tiene derecho a que se le notifique una sentencia dictada contra la Junta de Planificación como resultado de un recurso de revisión administrativa en el que se impugnó con éxito una rezonificación que fue promovida originalmente por ese ciudadano. Resolvemos en la afirmativa. Los hechos que dieron base a esta controversia son los siguientes.

I

En el 2001, el Sr. Reynaldo Domínguez Fragoso solicitó a la Junta de Planificación (Junta) un cambio de zonificación para un terreno de su propiedad que ubica en el Barrio Sabana Llana del Municipio de San Juan. La solicitud procuraba cambiar la zonificación de Distrito Residencial de Densidad Intermedia (R-3) a Distrito Industrial Liviano (I-1) o Comercial Central Intermedio (C-2). Ello, con el propósito de utilizar la propiedad para operar un taller de hojalatería y pintura, mecánica liviana y estacionamiento. La Junta aprobó esa reclasificación mediante una resolución emitida en el 2003. Luego, el 1 de junio de 2007 la Junta aprobó la Resolución C-18-1 en la que autorizó los cambios de zonificación de 78 solicitudes, entre ellas la del señor Domínguez Fragoso. Esta Resolución fue publicada en el periódico El Vocero el 1 de junio de 2007 y contenía 78 casos de rezonificación o recalificación aprobados desde el 1986 hasta el 2006. Asimismo, esta Resolución de la Junta enmendó los Mapas de Calificación del Municipio de San Juan, el Plano de Ordenamiento del Área Especial de Santurce y el Mapa de Zonificación Especial de Condado.

Inconforme con la resolución de la Junta, el Municipio de San Juan (Municipio) acudió oportunamente ante el Tribunal de Apelaciones mediante un recurso de revisión administrativa en el que impugnó las rezonificaciones mencionadas. Específicamente, el Municipio cuestionó la

validez de la Resolución por entender que el aviso en el periódico había sido defectuoso al no advertir o notificar adecuadamente a las partes afectadas el derecho de revisión judicial, al igual que el término legal para ello. Sin embargo, según el peticionario, el Municipio no le notificó a él ni a ninguna de las demás 77 personas que se verían afectadas por el resultado de la presentación de su causa de acción.[1]

Así las cosas, el 31 de octubre de 2008 el Tribunal de Apelaciones dictó una sentencia en la que le concedió la razón al Municipio, revocando la resolución emitida por la Junta y devolviendo el asunto a esa agencia para que emitiera nuevamente las reclasificaciones. De esa forma, y entre otros asuntos, la Junta debía explicar los fundamentos que utilizó para aprobar las enmiendas solicitadas. Esta sentencia no fue notificada ni al peticionario ni a ninguna de las 77 personas afectadas con la misma.

Mientras tanto, y como era de esperarse, el señor Domínguez Fragoso ya había realizado varias gestiones en las agencias correspondientes para obtener los permisos

---

[1] En el recurso de revisión el Municipio también adujo que el aviso por parte de la Junta inducía a error al indicar que las enmiendas efectuadas regirían a los 30 días de su publicación. Además, argumentó que la cantidad de reclasificaciones (78) hacía casi imposible la presentación de recursos de revisión administrativa para todos los casos. Igualmente, el Municipio alegó que la actuación de la Junta violó la Ley de Municipios Autónomos al impedir la participación del Municipio durante el proceso de cambios de zonificación.

requeridos para utilizar su propiedad conforme a la autorización que la Junta le había concedido.[2]

Ahora bien, como consecuencia de la sentencia dictada por el Tribunal de Apelaciones, la Junta revirtió la aprobación de la reclasificación obtenida por el señor Domínguez Fragoso y devolvió el terreno a su clasificación original R-3. Asimismo, la Junta Revisora de Permisos y Usos de Terrenos emitió una resolución en la que revocó el permiso de uso que se le había otorgado al señor Domínguez Fragoso para operar su taller.[3]

Inconforme, el 20 de mayo de 2011 el señor Domínguez Fragoso presentó en este Tribunal una petición de *mandamus* en la que, en síntesis, argumentó que: 1) el Tribunal de Apelaciones tenía la obligación de notificarle la sentencia de octubre de 2008; y 2) que el recurso presentado por el Municipio ante el foro apelativo intermedio no se perfeccionó adecuadamente pues no se le notificó a partes con interés, por lo que la sentencia del foro apelativo intermedio fue dictada sin jurisdicción para hacerlo y era nula.

En cuanto a la petición de *mandamus* presentada por el peticionario, el 27 de junio de 2011 emitimos una resolución en la que la declaramos no ha lugar por entender que el señor Domínguez Fragoso aún contaba con otros

---

[2] Algunos de los permisos fueron obtenidos antes de que el Tribunal de Apelaciones dictara la sentencia notificada el 31 de octubre de 2008 y otros después.

[3] Esa decisión fue impugnada por el señor Domínguez Fragoso y aún se encuentra en el Tribunal de Apelaciones pendiente de adjudicación. Véase, KLRA-2011-0224.

remedios en ley para adelantar su causa. Sin embargo, y con el propósito de ilustrar la razón por la cual no procedía el recurso de *mandamus*, en nuestra Resolución -la que aquí citamos *in extenso*- señalamos lo siguiente:

> El señor Domínguez Fragoso, al igual que los restantes 77 dueños de los predios afectados por la Resolución, eran partes con interés en la sentencia emitida por el Tribunal de Apelaciones el 31 de octubre de 2008. Ello, pues, la acción administrativa impugnada estaba específicamente dirigida a ellos... Al Tribunal de Apelaciones omitir notificarles la sentencia, los términos establecidos por nuestro ordenamiento para reconsiderar o acudir en alzada aún no han comenzado a cursar.

> A la luz de lo anterior, el peticionario aún puede presentar ante el foro apelativo intermedio una moción solicitando la re-notificación del dictamen impugnado. El Tribunal de Apelaciones, de constatar que no notificó su sentencia a los 78 dueños de los predios afectados por la Resolución, deberá re-notificar la misma. Una vez el Tribunal cumpla con lo indicado, comenzarán a cursar los términos de reconsideración o apelación provistos por Ley.

> En dicho término, el señor Domínguez Fragoso podrá impugnar la sentencia por falta de jurisdicción si es que, en efecto, el Municipio omitió notificar su alegato a todas las partes con interés, según lo exige la Regla 58 del Reglamento del Tribunal de Apelaciones... al igual que nuestros pronunciamientos jurisprudenciales... De tomar el curso indicado, será el Tribunal de Apelaciones -al resolver el posible recurso de reconsideración- o esta Curia -al disponer de un potencial escrito de *certiorari*- quien ausculte en su día si el Tribunal de Apelaciones actuó sin jurisdicción al atender un recurso en sus méritos que nunca fue notificado por el Municipio a todas las partes con interés.

> Por todo lo anterior, declaramos *No Ha Lugar* el auto de *mandamus* reseñado ya que el peticionario aún cuenta con otros remedios

en Ley que aconsejan evitar ejercer nuestra jurisdicción original para atender tan privilegiado recurso extraordinario.[4] (Citas omitidas.)

A base de lo expresado en nuestra Resolución, el 11 de julio de 2011 el señor Domínguez Fragoso presentó ante el Tribunal de Apelaciones un escrito titulado *Comparecencia de parte indispensable en solicitud para que se notifique copia de la sentencia emitida por este foro el 31 de octubre de 2008 en los casos de epígrafe, de conformidad con lo resuelto por el Honorable Tribunal Supremo en el caso de mandamus MD-2011-0004.*

Sin embargo, el Tribunal de Apelaciones denegó la solicitud del señor Domínguez Fragoso. **El foro apelativo intermedio razonó que la notificación de la Junta sobre las enmiendas a los Mapas de Calificación de Suelos fue defectuosa y era una acción reglamentaria, por lo que solo podía ser revisada en un contexto más limitado. Concluyó que su decisión servía precisamente para garantizar adecuadamente los derechos de las posibles partes afectadas por la rezonificación y que el señor Domínguez Fragoso no estaba sufriendo ningún menoscabo particular de sus**

---

[4] Véase Resolución de este Tribunal de 22 de junio de 2011. Apéndice 2 del *certiorari*, págs. 23-24. **Con relación a esa Resolución, 7 de los 9 jueces coincidieron en que al peticionario parecía asistirle la razón en cuanto a su derecho a que se le notificara la sentencia en controversia. La Juez Asociada señora Rodríguez Rodríguez fue aún más lejos al advertir que ella "acogería el recurso presentado como uno de** *certiorari*, **paralizaría los procedimientos ante la Junta de Planificación y emitiría contra el Municipio de San Juan una orden de mostrar causa por la cual no debamos revocar la sentencia dictada por el Tribunal de Apelaciones". Por su parte el Juez Presidente señor Hernández Denton le hubiera concedido un término de 10 días al Municipio para que expresase su posición. El Juez Asociado señor Martínez Torres no intervino.**

**derechos porque la decisión administrativa era reglamentaria, y que por los errores que cometió la Junta en la notificación, fue ineficaz.**

Inconforme con la decisión del Tribunal de Apelaciones, el señor Domínguez Fragoso presentó una oportuna Petición de *certiorari* ante este Tribunal. En su escrito el peticionario planteó la comisión de varios errores, de los cuales basta solo uno para convencernos de que debemos revocar la resolución del Tribunal de Apelaciones. Este es el siguiente:

> …Erró el Tribunal de Apelaciones al negarse a notificarle al Sr. Domínguez Fragoso la Sentencia del 31 de octubre de [2008] a pesar que éste es una parte con interés que se encuentra directa y adversamente afectada por la determinación tomada en dicha Sentencia, cosa que el Tribunal, también se niega a reconocer.

Por su parte, el 12 de diciembre de 2011 el Municipio presentó un *Memorando en Oposición* a la expedición del recurso en el que alegó, en síntesis, que el Tribunal de Apelaciones no estaba obligado a notificar su sentencia al señor Domínguez Fragoso porque este Tribunal no entró en los méritos del caso. El Municipio sostuvo que nuestros pronunciamientos en la Resolución de 27 de junio de 2011 no sentaron un precedente jurídico y por eso debían tenerse por no puestos.

Así las cosas, el 13 de enero de 2012 emitimos una Resolución, notificada el 19 de enero de 2012, en la que le concedimos al Municipio un término de 20 días para que mostrara causa por la cual no debíamos revocar la

Resolución dictada por el Tribunal de Apelaciones. El 8 de febrero de 2012 el Municipio presentó su escrito en cumplimiento de orden en la que nos solicitó que acogiéramos su *Memorando en Oposición* como su escrito para mostrar causa. Así pues, con el beneficio de ambas comparecencias, expedimos y procedemos a resolver.

## II

### A. Proceso de zonificación

El proceso de *zonificación* es el mecanismo mediante el cual se establecen o fijan los usos adecuados para todos los terrenos de Puerto Rico y de las islas adyacentes que le pertenecen.[5] Mediante la zonificación los terrenos se clasifican en zonas o distritos en los que se establecen disposiciones específicas sobre el uso de estos y las obras y estructuras a permitirse.[6] Para ello también se crean los mapas de zonificación que son los que demarcan y definen los diferentes distritos.[7]

Por su parte, la Junta de Planificación (Junta) es la agencia que está facultada para preparar y adoptar los mapas de zonificación, así como para considerar y atender

---

[5] Sec. 1.03 del Reglamento de zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 6211, Departamento de Estado, 5 de noviembre de 2000, pág. 1. (Aunque ese reglamento fue anulado por el Reglamento Núm. 7511, Departamento de Estado, 28 de mayo de 2008, era el vigente al momento de los hechos).

[6] Introducción del Reglamento de zonificación de Puerto Rico, Íd. Véase *T-JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70, 81-82 (1999).

[7] Íd.

las solicitudes de enmiendas a estos.[8] Es decir, la Junta es la encargada de considerar cambios a la zonificación de determinado sector o solar. Al ejercer esa facultad, ciertamente hemos establecido que la Junta ejercita una función cuasi legislativa, ya que no adjudica una controversia sino que establece una reglamentación.[9] Ello, porque en dicho proceso la Junta actúa en el ejercicio del poder legislativo delegado.[10]

Precisamente en Luan Investment Corp. v. Román, 125 D.P.R. 533, 546 (1990), reconocimos que el proceso de zonificación es de naturaleza cuasi legislativo para fines de que la Junta no tiene que expresar las determinaciones de hecho y de derecho en las que fundamentó su decisión, como si se tratara de un proceso de naturaleza adjudicativa. En esa ocasión señalamos que

> [l]os mapas de zonificación y sus enmiendas representan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia en particular entre una o más personas, sino que son actos producto de los instrumentos con los cuales el Estado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad.

---

[8] Art. 11 de la Ley Núm. 75 de 24 de junio de 1975, Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62j(5); Sec. 4.04 del Reglamento de zonificación de Puerto Rico, supra, pág. 47.

[9] T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 83; Luan Investment Corp. v. Román, 125 D.P.R. 533, 546 (1990).

[10] Luan Investment Corp. v. Román, supra, pág. 545.

**B. La notificación en el proceso de zonificación**

En su Resolución, el Tribunal de Apelaciones se negó a notificar la Sentencia al señor Domínguez Fragoso porque "no está sufriendo ningún menoscabo particular de sus derechos pues la decisión administrativa, además de ser reglamentaria, fue ineficaz…".[11] Implica esto que al proceso particular de zonificación, por ser reglamentario ¿le aplican automáticamente las formalidades que establece la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.)[12] para la formulación de reglamentos? La contestación es en la negativa. Nos explicamos.

1. **Clasificaciones generales en los procesos de adopción de reglas y reglamentos según la L.P.A.U.**

Para fines del proceso de adopción de reglas y reglamentos, la L.P.A.U. reconoce dos clasificaciones generales, a saber, las reglas legislativas y las reglas no legislativas.[13] En el caso de la "regla legislativa" la hemos definido como "aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley".[14] Este tipo de regla "impacta directamente a los ciudadanos **en general** y obliga con fuerza de ley a la agencia".[15] En consecuencia, las agencias deben adoptarlas

---

[11] Apéndice 1 del *certiorari*, pág. 6.

[12] Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*

[13] Tosado v. A.E.E., 165 D.P.R. 377, 389 (2005).

[14] Íd.; Asociación Maestros v. Comisión, 159 D.P.R. 81 (2003).

[15] Íd. (Énfasis suplido.)

en estricta observación de los requisitos de la L.P.A.U., brindándoles la oportunidad a los ciudadanos para conocerlas y expresar cualquier reparo antes de su aprobación final.[16]

Por su parte, las "reglas no legislativas" son aquellas –interpretativas, procesales o declaraciones de política general- que por sus propósitos no requieren el cumplimiento de las formalidades contempladas en la L.P.A.U.[17] Ello, porque esta modalidad no vincula a la agencia ni crea derechos sustantivos o procesales en los cuales el ciudadano puede confiar.[18] Así, pues, contrario a las reglas legislativas –que generan derechos entre las partes- las reglas no legislativas "no tienen ningún efecto legal vinculante".[19]

Como hemos expuesto, la promulgación de "reglas legislativas" requiere una serie de formalidades legales. Entre los requisitos que la L.P.A.U. establece se encuentra la notificación al público de la determinación de la agencia de adoptar la reglamentación. Esa notificación debe realizarse mediante la publicación de un aviso en español e inglés en un periódico de circulación general y en el internet.[20] Cuando la reglamentación de la agencia incide en

---

[16] Tosado v. A.E.E., *supra*, pág. 390; Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002).

[17] González v. E.L.A., 167 D.P.R. 400, 411 (2006).

[18] Íd.

[19] Íd., págs. 411-412.

[20] Sec. 2.1 de la L.P.A.U., *supra*, 3 L.P.R.A. sec. 2121.

alguna comunidad en específico, hay que publicar el aviso en español e inglés en un periódico regional de esa comunidad.[21] Es decir, lo anterior evidentemente no implica ni requiere una notificación personal a cada una de las personas que se verían afectadas por la reglamentación. Basta con la notificación general.

2. **Caso particular del proceso cuasi-legislativo de zonificación.**

En el caso específico de la zonificación no hay duda de que es un proceso cuasi legislativo. No obstante, ello no acarrea la aplicación automática de la doctrina general sobre la aprobación de reglamentos y mucho menos en lo concerniente al aspecto de la notificación. Es evidente que el proceso de zonificación es distinguible y particular.

Los cambios de zonificación tienen su génesis por petición de alguna persona, organismo o a iniciativa propia de la Junta.[22] El Reglamento de zonificación[23] dispone precisamente los requisitos esenciales que deben cumplirse en el proceso de cambios de zonificación. La Sec. 4.06 del Reglamento establece requisitos diferentes, ya sea si la petición fue por iniciativa propia de la Junta o si fue por una persona, agencia o entidad.[24] Lo anterior implica que los peticionarios en el proceso tendrán que cumplir con las

---

[21] Íd.

[22] Sec. 4.04 del Reglamento de zonificación de Puerto Rico, *supra*, pág. 47. Véase <u>T-JAC, Inc. v. Caguas Centrum Limited</u>, *supra*, pág. 84.

[23] Sec. 4.06 del Reglamento de zonificación de Puerto Rico, *supra*, págs. 48-50.

[24] Íd.

obligaciones y los requisitos que el Reglamento de zonificación establece al respecto.[25] Sin embargo, independientemente de quién sea el peticionario en el proceso de cambio de zonificación, surge diáfanamente del Reglamento la importancia de notificar a los dueños de las propiedades de la zona sujeta al cambio.[26]

Por ejemplo, la Sec. 4.06 señala que "[c]uando sea por iniciativa propia y se trate de solares de pertenencia privada o pública, la Junta notificará al dueño de la propiedad".[27] Evidentemente la notificación es esencial en todos los aspectos que cubren el proceso de zonificación. Esto se fundamenta en que un cambio de zonificación tiene la consecuencia de limitar la propiedad de los ciudadanos. No estamos ante un reglamento de aplicación general. Por el contrario, el cambio de zonificación es una reglamentación de aplicación particular. Por esa razón, la oportuna notificación de un cambio de zonificación es parte integral del debido proceso de ley de los ciudadanos.[28] Cónsono con lo anterior, en Montoto v. Lorie, 145 D.P.R. 30, 44 (1998) reconocimos que cuando la Junta altera la zonificación existente de un área, ello "hace indispensable la adecuada

---

[25] Véanse T-JAC, Inc. v. Caguas Centrum Limited, *supra*; Montoto v. Lorie, 145 D.P.R. 30 (1998).

[26] Sec. 4.06 del Reglamento de zonificación de Puerto Rico, *supra*, págs. 48-50.

[27] Íd., pág. 50.

[28] P.E. Salkin, American Law of Zoning, 5ta ed., Ed. Thomson Reuters/West, 2011, Vol. 1, pág. 8-29.

notificación a **todas las partes cuyos intereses puedan quedar afectados".**[29]

Por consiguiente, si la notificación a los dueños de las propiedades sujetas al proceso de zonificación es tan esencial en el ámbito administrativo, no vemos cómo a nivel apelativo la notificación pueda ser más laxa. En otras palabras, **la importancia de la notificación a los propietarios cubre todo el proceso de zonificación, incluyendo las etapas apelativas.** Lo anterior, claro está, es solo un elemento de las demás formalidades que la ley y los reglamentos imponen al proceso.

### III

### A

La sentencia que dictó el Tribunal de Apelaciones el 31 de octubre de 2008 dejó sin efecto las rezonificaciones previas de los predios pertenecientes tanto al señor Domínguez Fragoso como a otras 77 personas. Como ya hemos establecido, dicha sentencia **no** fue notificada a ninguna de estas personas. Ahora bien, nótese que tales rezonificaciones no fueron el producto de una acción *motu proprio* de la Junta, para las cuales el Reglamento vigente al momento claramente exigía el que se notificara a todas las personas que pudieran verse afectadas. Sino que, más importante aún, tales rezonificaciones surgieron como el fruto de la acción del peticionario y los demás ciudadanos que tenían un **interés** en que se re-zonificaran sus

---

[29] Montoto v. Lorie, *supra*, pág. 44. (Énfasis suplido.)

correspondientes predios, y así lo consiguieron. Por lo tanto, es evidente que el Tribunal de Apelaciones estaba obligado a notificar la sentencia a los 78 propietarios. En lo pertinente al caso de autos, determinamos que el foro apelativo intermedio tenía que notificar su sentencia de 31 de octubre de 2008 al señor Domínguez Fragoso, porque este es parte con interés en el proceso. Nos explicamos.

En primer lugar, es axiomático que cuando una actuación judicial afecta directamente la zonificación de un predio, esta debe ser notificada como mínimo al dueño del predio. Como ya hemos expuesto, es indispensable entonces que los cambios de zonificación sean notificados adecuadamente a todas las partes cuyos intereses puedan quedar afectados. ¿Quién puede tener mayor interés sobre la calificación de un predio que no sea su propio dueño? Así pues, salta a la vista que el señor Domínguez Fragoso, como dueño de un predio re-zonificado y que el Tribunal de Apelaciones revocó, es parte con interés en el proceso. Por consiguiente, el foro apelativo intermedio estaba obligado a notificar su sentencia al señor Domínguez Fragoso.

En segundo lugar, en el caso de autos el señor Domínguez Fragoso es "parte" porque es el promovente en un proceso de cambios de zonificación y su propiedad era el objeto de la acción administrativa. Lo anterior es cónsono con lo que establece la Sec. 1.3(j) de la L.P.A.U.[30] **Y es que es patente que el aquí peticionario era una parte con**

---

[30] 3 L.P.R.A. sec. 2102.

**interés ante la conspicua realidad de que la rezonificación de su predio se había dado a instancias y expensas suyas.**

Por lo anterior, es forzoso concluir que la falta de notificación de la sentencia del 31 de octubre de 2008 tuvo el efecto de dejar al peticionario –así como a las otras 77 personas que iniciaron el proceso administrativo ante la Junta- desprovistas de una oportunidad de solicitar reconsideración o revisión de ese dictamen, evitando el que fueran oídos en la causa de acción entablada por el Municipio. Como consecuencia, los intereses del señor Domínguez Fragoso se vieron huérfanos de protección y ciertamente afectados por la decisión del Tribunal de Apelaciones. Prueba de ello es que debido a esa determinación del foro apelativo intermedio la Junta devolvió el predio del señor Domínguez Fragoso a su calificación original (R-3), y posteriormente la Junta Revisora le revocó el permiso de uso que había obtenido.

Es por eso que resulta totalmente errada, no solo la determinación, sino el fundamento del Tribunal de Apelaciones en su sentencia de 17 de agosto de 2011, al señalar que "su decisión servía precisamente para garantizar adecuadamente los derechos de las posibles partes afectadas por la rezonificación y que el señor Domínguez Fragoso no estaba sufriendo ningún menoscabo particular de sus derechos porque la decisión administrativa tomada por la Junta..." Todo lo contrario.

Al insistir en no notificar al peticionario su sentencia de 31 de octubre de 2008, el foro apelativo intermedio dejó indefectiblemente fuera del proceso a una parte con interés que tiene el perfecto derecho de cuestionar una sentencia dictada como producto de un proceso que claramente lo ha afectado negativamente.

**B.**

En su escrito el Municipio se sirve de las expresiones del Tribunal de Apelaciones con relación al carácter reglamentario y no adjudicativo de la actuación de la Junta para justificar la falta de notificación. **Nuevamente, lo que el Municipio y el Tribunal de Apelaciones pierden de perspectiva es que más allá de categorizar la actuación de la Junta como una reglamentaria o adjudicativa, el señor Domínguez Fragoso es una parte con interés.** Por lo tanto, cualquier sentencia relacionada con esta tenía que ser notificada a esas 78 personas.

**IV**

Así, pues, por los fundamentos antes expuestos, expedimos el recurso y revocamos la Resolución del Tribunal de Apelaciones. El foro apelativo intermedio tendrá que notificar al señor Domínguez Fragoso y a las demás partes que no haya notificado. Una vez el tribunal cumpla sin dilación con lo indicado, comenzarán a contar los términos de reconsideración[31] o apelación provistos por ley.

---

[31] El mecanismo de reconsideración le permitiría al Tribunal de Apelaciones evaluar su jurisdicción por primera vez en este caso. De esa forma, el foro apelativo intermedio podría evaluar si el Municipio omitió notificar su recurso a todas las partes con interés.

Se dictará sentencia de conformidad.


                                        Erick V. Kolthoff Caraballo
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Daphne Ramírez, Olga R. Ramírez y Carlos Andino<br><br>    Recurridos<br><br>           v.<br><br>Junta de Planificación de Puerto Rico<br><br>    Recurrida<br><br>─────────────<br><br>Municipio de San Juan<br><br>    Recurrida<br><br>           v.<br><br>Junta de Planificación de Puerto Rico<br><br>    Agencia-Recurrida<br><br>Reynaldo Domínguez Fragoso<br><br>    Peticionario | CC-2011-772 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 1 de junio de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el recurso y se revoca la Resolución del Tribunal de Apelaciones. El foro apelativo intermedio tendrá que notificar al Sr. Reynaldo Domínguez Fragoso y a las demás partes que no haya notificado. Una vez el tribunal cumpla sin dilación con lo indicado, comenzarán a contar los términos de reconsideración o apelación provistos por ley.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente y hace constar la siguiente expresión. "El Juez Presidente señor Hernández Denton disiente por entender que el recurso de revisión presentado por el Municipio de San Juan no se perfeccionó. Del expediente surge claramente que el Municipio no notificó la presentación de su recurso a los 78 propietarios que

promovieron las rezonificaciones impugnadas. Como consecuencia, el Tribunal de Apelaciones dictó sentencia sin tener jurisdicción para ello, por lo que su dictamen es nulo. Como resultado de lo anterior, revocaríamos la sentencia del Tribunal de Apelaciones, desestimaríamos el recurso de revisión administrativa y ordenaríamos la reinstalación de las rezonificaciones aprobadas originalmente por la Junta de Planificación". La Juez Asociada señora Rodríguez Rodríguez no intervino. El Juez Asociado señor Martínez Torres no interviene.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo